**The below described is SIGNED.**

**Dated: June 21, 2006**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **Clyde Grant Wilbur and Deborah T. Wilbur**, | Bankruptcy Number 06-20104 |
| Debtors. | Chapter 13 |

## MEMORANDUM OPINION

The matter before the Court is the hearing on confirmation of Clyde and Deborah Wilburs' ("the Wilburs") proposed chapter 13 plan. Specifically, the Court is called upon to determine whether the term "unsecured creditors" in 11 U.S.C. § 1325(b)(1)(B)[1] refers to non-priority unsecured creditors only. The Wilburs' position is that the term "unsecured creditors," as found in § 1325(b)(1)(B), includes unsecured creditors holding both priority and non-priority claims. The chapter 13 Trustee, however, contends that "unsecured creditors" refers only to payments made to unsecured creditors with non-priority claims. As this matter presents an issue of first impression in light of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the Court elects to issue this Memorandum Opinion. The Court determines that

---

[1]  All statutory references herein are to the Bankruptcy Code unless stated otherwise.

the term "unsecured creditors," as used in § 1325(b)(1)(B), refers to non-priority unsecured creditors only.

I. **FACTUAL BACKGROUND**

The Wilburs filed their chapter 13 petition on January 16, 2006. Their Statement of Financial Affairs and Schedules list priority unsecured debts amounting to $88,478.64, and non-priority unsecured debts amounting to $12,496.47. Their Statement of Current Monthly Income, as set forth in Form B22C, shows an annualized current monthly income of $84,417.60,[2] resulting in monthly disposable income of $330.90. This amount includes a deduction for payments to priority unsecured creditors. Thus, by the terms of § 1325(b)(1)(B) and Form B22C, the Wilburs are presumptively required to return $330.90 per month, or a total of $19,854, to "unsecured creditors."[3] The Wilburs' chapter 13 plan proposes to pay priority unsecured creditors approximately $40,802, and would pay non-priority unsecured creditors at least $4,000.

At the confirmation hearing in this case, the chapter 13 Trustee objected to confirmation of the Wilburs' chapter 13 plan because they propose to pay non-priority unsecured creditors a total of only $4,000, whereas Form B22C requires a total return to "unsecured creditors" of $19,854. The Trustee argued that the proposed plan does not comply with the terms of § 1325(b)(1)(B). The Wilburs argued that they satisfy the terms of § 1325(b)(1)(B) because the proposed return to non-priority unsecured creditors ($4,000) plus the proposed return to priority

---

[2] The median income for a family of two in Utah is $45,374. Because the Wilburs' income is greater than the median income for a family of two in Utah, they are required to commit to an "applicable commitment period" of 5 years under § 1325(b)(4).

[3] As this Court discussed in In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006), a debtor's monthly disposable income (the number resulting from Form B22C) represents the amount a debtor must presumptively return to "unsecured creditors" under § 1325(b)(1)(B). The debtor, however, may rebut the presumption that this number represents the debtor's projected disposable income.

unsecured creditors ($40,802) is greater than the amount resulting from Form B22C ($19,854). This dispute is the subject of this Memorandum Opinion.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(1).

## III. ANALYSIS

### A. Statutory Dilemma

Section 1325(b)(1)(B) provides that if the Trustee or an unsecured creditor objects to confirmation of a debtor's proposed chapter 13 plan, the Court may only confirm the plan if it proposes to pay creditors in full or "provides that all of the debtor's projected *disposable income* . . . will be applied to make payments to *unsecured creditors* under the plan."[4] "Disposable income" means current monthly income received by the debtor less "amounts reasonably necessary to be expended," which is defined by §§ 707(b)(2)(A) and (B).[5] Sections 707(b)(2)(A) and (B) provide a lengthy and detailed method for calculating a debtor's "disposable income," pointing to specific deductions a debtor may take from his gross monthly income. This calculation has been memorialized in Form B22C. Among the deductions taken under this calculation, the debtor is directed to account for payments on account of secured debts[6] and for payments on priority claims.[7] After subtracting these amounts from the debtor's gross monthly

---

[4] Emphasis added.

[5] Sections 1325(b)(1)(B) and (3).

[6] Section 707(a)(2)(A)(iii); see also line 47 of Form B22C.

[7] Section 707(a)(2)(A)(iv); see also line 49 of Form B22C.

3

income, the number resulting (the "monthly disposable income") is the presumptive amount the debtor must return to "unsecured creditors" under § 1325(b)(1)(B).[8]

### B. Statutory Construction

Statutory construction begins with the language of the statute itself and an analysis of whether the language is plain.[9] If the Court determines that the language of the statute is plain, the "sole function of the courts is to enforce it according to its terms."[10] Where the language is plain, the Court should generally enforce that language by giving each word its plain meaning.[11] The Court's inquiry will continue beyond the language of the statute where (1) a literal application of the statutory language would be at odds with the manifest intent of the legislature; (2) a literal application of the statutory language would produce an absurd result; or (3) the statutory language is ambiguous.[12]

    1. <u>Plain Language</u>:

As the Wilburs argue, the term "unsecured creditors" in § 1325(b)(1)(B) appears to be clear and plain on its face. An unsecured creditor is, quite simply, a creditor who is not secured.[13] Whereas an unsecured creditor may be entitled to priority treatment, it remains an

---

[8] See <u>Jass</u>, 340 B.R. at 418.

[9] <u>Id.</u> at 415.

[10] <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 241 (1989) (citation omitted)

[11] <u>Id.</u>; see also <u>Pioneer Inv. Svcs. Co. v. Brunswick Assoc. L.P.</u>, 507 U.S. 380, 388 (1993).

[12] <u>Jass</u>, 340 B.R. at 415 (citing <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235 (1989); <u>Pioneer Investment Svcs v. Brunswick Assoc. Ltd. P'ship</u>, 507 U.S. 380 (1993); <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564 (1982); <u>Lamie v. United States Trustee</u>, 540 U.S. 526 (2004)).

[13] See <u>Matter of Prescott</u>, 805 F.2d 719 (7th Cir. 1986).

4

unsecured creditor despite this treatment. [14] Thus, the reference to "unsecured creditors" in § 1325(b)(1)(B) would seem to refer both to priority and non-priority unsecured creditors.

As stated above, the Court's determination of the plain meaning of a statute should be the end of the Court's inquiry unless the plain language is at odds with the legislature's manifest intent or unless a literal application of the statute would produce an absurd result. The Trustee argues, and the Court agrees, that both of these exceptions require the Court to interpret the term "unsecured creditors" in § 1325(b)(1)(B) contrary to its plain meaning.

2. Congress's Manifest Intent:

As the Court stated in Jass:

Generally, a court considering Congressional intent should look first to the Congressional record. Where this is not helpful, a court may also consider relevant legal practice in place before recent changes to the statute at hand. In cases involving changes under the BAPCPA, the Congressional record is largely silent because the only records available are little more than a gloss of the statutory language of the BAPCPA. Thus, the Court's only measure for determining whether its holding is contrary to Congressional intent is pre-BAPCPA practice.[15]

Considering the law as it stood pre-BAPCPA, the Court believes Congress intended the reference to "unsecured creditors" in § 1325(b)(1)(B) to mean non-priority unsecured creditors only.

The purpose of the calculations under § 707(a)(2) and Form B22C is, quite clearly, to reach an estimate of how much the debtor can afford to pay non-priority unsecured creditors by deducting all necessary expenses that must be paid before payments are made to "unsecured

---

[14] Section 507(a)(1) (defining first priority claims as "[a]llowed unsecured claims for domestic support obligations. . ."); § 507(a)(3) (defining third priority claims as "unsecured claims allowed under section 502(f) of this title.").

[15] Jass, 340 B.R. at 416.

creditors." Indeed, the deductions allowed under Form B22C track the considerations that a debtor had to make pre-BAPCPA before paying non-priority unsecured creditors.

The pre-BAPCPA debtor would file schedule I exhibiting monthly gross income, and file schedule J exhibiting the debtor's expenses which were arguably reasonably necessary for the debtor's maintenance. After subtracting the expenses listed on schedule J from the income listed on schedule I, the debtor would obtain his or her Monthly Net Income. This amount would normally be the amount the debtor proposed to pay to the Trustee in the chapter 13 plan. To calculate the amount proposed to be returned to non-priority unsecured creditors, the debtor would subtract from the plan payment the amounts to be paid to secured creditors and to priority unsecured creditors.

Against this background, Congress amended the Bankruptcy Code under the BAPCPA to require the debtor's calculation of his return to unsecured creditors by using Form B22C. Form B22C tracks the pre-BAPCPA calculation of the debtor's return to non-priority unsecured creditors. It requires the debtor to start with gross income and first deduct living expenses. It then asks the debtor to subtract payments to secured and priority creditors. As the basic inquiry under Form B22C is the same as the debtor's former pre-BAPCPA inquiry, it follows that the purpose behind Form B22C should also be the same — to calculate the return to non-priority unsecured creditors.[16] Thus, it seems clear to this Court that the reference to "unsecured creditors" in § 1325(b)(1)(B) is more specifically referring to non-priority unsecured creditors.

---

[16] To be sure, the BAPCPA did change the debtor's inquiry for determining the amounts due to non-priority unsecured creditors. Among other things, the BAPCPA provided a standardized expectation for specific deductions allowed for determining the debtor's disposable income. For purposes of this decision, however, the Court notes only that the *process* for determining the amount to be paid to non-priority unsecured creditors remains substantially untouched from pre-BAPCPA practice.

### 3. The Plain Meaning Would Reach an Absurd Result:

As discussed above, the terms of § 707(a)(2) and Form B22C require the debtor to account for chapter 13 payments to be made to priority unsecured creditors *before* reaching the debtor's presumptive "projected disposable income." Section 1325(b)(1)(B) then requires the debtor to return the "projected disposable income" to "unsecured creditors." If the Court interpreted "unsecured creditors" to include priority unsecured creditors, the debtor would, in effect, be double-counting. Allowing the debtor to double-count in this fashion would undermine the purpose and efficacy of §707(b)(2) and Form B22C. This would be an absurd result.

The Court believes implementing the plain meaning of "unsecured creditors" under § 1325(b)(1)(B) would be contrary to Congress's manifest intent and would yield an absurd result. Therefore, the Court will interpret "unsecured creditors" to refer to non-priority unsecured creditors only.

## IV. APPLICATION OF § 1325(b)(1)(B) TO THE WILBURS

The Wilburs' proposed chapter 13 plan would pay non-priority unsecured creditors a total of $4,000. Their Form B22C requires them to return at least $19,854 to "unsecured creditors." As the Court interprets this term to exclude payments to priority unsecured creditors, they do not satisfy the requirements of § 1325(b)(1)(B). The Wilburs, therefore, have not proposed a plan that provides for the payment of all of their projected disposable income to non-priority unsecured creditors as required by § 1325(b)(1)(B).

7

## V. CONCLUSION

The Court will deny confirmation of the Wilburs' proposed chapter 13 plan without prejudice. The Wilburs are free to propose a chapter 13 plan that meets the requirements of § 1325(b)(1)(B) under the terms of this decision. A separate order accompanies this Memorandum Opinion.



\_\_\_ooo0ooo\_\_\_

Service of the foregoing **MEMORANDUM OPINION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Clyde and Deborah Wilbur
48 West 300 South, #901N
Salt Lake City, UT 84101

Stephen Enderton
David Cook
234 East 3900 South
Salt Lake City, UT 84107

Vincent Cameron
47 West 200 South
Suite 600
Salt Lake City, UT 84101

United States Trustee
405 South Main Street
Suite 300
Salt Lake City, UT 84111